# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JESSE POLANSKY M.D., M.P.H., et al. | CIVIL ACTION |
|---|---|
| v. | NO. 12-4239 |
| EXECUTIVE HEALTH RESOURCES, INC., et al. | |

## MEMORANDUM RE: ATTORNEY-CLIENT PRIVILEGE

Baylson, J.                                                                            March 13, 2018

      This is a Qui Tam False Claims Act case in which the Court has held a number of pretrial conferences. Judge O'Neill, to whom this case was previously assigned, issued a lengthy Memorandum of the nature of the claims and denied Defendants' Motion to Dismiss in large part. After the case was transferred to the undersigned, the Court granted Plaintiff's Motion to Supplement the Complaint (ECF 198).

      Substantial disputes about discovery continue. The Court has indicated a preference for having a bellwether trial of a limited, but representative, number of claims in this case for purposes of attorney and judicial evaluation of the case, leading to possible settlement dialogue. If the case went to trial, the Court must structure the trial with appropriate issues, whether jury or non-jury, and select the claims for a bellwether trial that would appropriate for determination, under principles of collateral estopped, of the remaining claims following the bellwether trial (and any appeal).

      There are substantial issues in this case as to what type of claims should be included in discovery as well as trial. This issue was discussed at a hearing on November 6, 2017, and in an Order previously issued on November 7, 2017 (ECF 198), and two Orders on December 22, 2017 (ECF 211 and 212).

Plaintiff asserts that he has selected 220 claims for discovery as a preliminary to the bellwether trial on a random basis, and has filed a Motion that the Court require the Defendant to do likewise (ECF 182). Defendant responded to this Motion (ECF 193) on October 17, 2017.

At the hearing held on November 6, 2017, counsel explained that they had jointly picked twenty-four hospitals in four states from which the medical records for the bellwether trial were to be drawn. (Hearing Tr., at 8:10, 27:15, ECF 200.) The parties further agreed on four categories of diagnoses or procedures (referred to in the record as "ECGs"), and Defendant turned over data on approximately 38,000 patient cases, including date, procedure, medical condition, referring physician, and inpatient/outpatient recommendation. (Id. at 8:15-20.) By the time of the hearing, each side had picked 220 patient cases for a potential bellwether trial. (Id.) Plaintiff asserted he had chosen his 220 cases through random statistical sampling of cases coded as inpatient, while Defendant had selected its 220 cases—roughly half of which had been coded as outpatient—through a non-random method that was not explained. The Court declined ruling immediately on the merits of the randomization motion, and suggested that the parties explore the methods by which EHR selected its 220 cases at an upcoming 30(b)(6) deposition. (Id. at 25:1-2.)

As Relator argues in his post-hearing brief (ECF 223), at the subsequent 30(b)(6) deposition, counsel for Defendant aggressively asserted work product and/or attorney-client privilege as to practically every single question asked about EHR's method of selecting its 220 cases. EHR counsel also objected repeatedly to the form of questions, and asserted that the questions asked about EHR's case selection method were beyond the scope of the topics

designated for deposition.[1]  (Greenspan Dep., ECF 223.)  This itself was wrong.  As a result, deponent Steven Greenspan, director of government appeals and later vice-president of regulatory affairs at EHR during the relevant period, provided essentially no probative information whatsoever on how EHR selected its 220 cases for the bellwether trial.  (Id. at 13:23-14-4, 27:12-48:20.)  One typical exchange was as follows:

> Q. Did EHR attempt to select cases that are more favorable to its position in the lawsuit than the cases would be if they were randomly selected?
> MR. DUNN: Objection to the form.  Moreover, I object that this calls for testimony that is protected attorney work product and protected by the attorney/client privilege.  And I will direct the witness not to answer.
> Q. Will you follow that instruction?
> A. Yes.
> Q. If EHR had looked through all 38,000 records and found the 220 records that are the most helpful to its position in the lawsuit, would you consider that selection of cases to be representative of the larger universe of 38,000?
> MR. DUNN: Objection to the form. It goes beyond the scope of the noticed deposition topic. You may answer in your personal capacity, but it will not bind the company.
> THE WITNESS: Yes, it would be representative.

(Id. at 40:25-42:2.)

The Court finds that the assertion of privilege by HER in this case is far too broad and it is not in accord with accepted concepts of attorney-client privilege.  As the Court issues this Order, it is not aware whether there has been a complete exchange of privilege logs, as required by Order of December 22, 2017 (ECF 212).  In a complex case such as this, where Defendant is asserting privilege to bar discovery which the Court believes is relevant to the maintenance of a bellwether trial, the privilege log is essential, and must include verbal as well as written

---

[1] Topic 7 designated for the 30(b)(6) deposition was as follows: "EHR's method of selecting patient cases for the Medical Records review, including any steps taken to ensure the selected patient cases would representative of EHR's patient cases for the relevant universe of patient cases (i.e., ECGs, states, hospitals, and timeframe), and any characteristics of the patient cases used by EHR to make the selections (and the sources of that information)." (Designation of Deposition Topics at 7, ECF 221-2.)

communications, as it appears that Defendant has asserted privileged oral communications separate from any allegedly privileged documents.

The Court recognizes that privileged communications are not discoverable. However, Third Circuit law is clear that claims of privilege are to be narrowly construed, and that although the privilege protects communications, it does not protect facts from discovery.

The Court rejects Defendant's assertion that the process by which Defendant selected the 220 cases for pretrial discovery is "privileged" as without foundation.

The Court refers the parties to a recent comprehensive discussion of attorney-client privilege (under Pennsylvania law, which is likely applicable here) in a corporate setting. See Sodexomagic v. Drexel University, Civil Action 16-5144, Memorandum dated February 23, 2018, (ECF 185). This Court's ruling in that case must be followed by the parties in this case as well.

Defendant itself must have made some strategic decision as to how to go about the selection of the 220 cases. The Court agrees that Plaintiff is not entitled to the actual communications for legal advice, which an officer or employee of the Defendant, a corporation, requested or received from its counsel. However, the facts of which the Defendant had possession, whether in the possession of business people or attorneys, paralegals, or all of the above, and the decisions made, and actions taken, pursuant to and following those privileged communications, are not privileged. These corporate decisions, whether based on legal advice or otherwise, and conduct taken by the corporation or its representatives, is subject to reasonable discovery in this case as a prelude to the Court making any substantive rulings on bellweather procedures.

One of the reasons for a bellwether trial is to arrive at a jury verdict, including answers to jury interrogatories, which will be determinative, whether in whole or part, to the remaining claims in this case. The Court believes it is essential, in fashioning the completion of discovery, and issues to be presented in the trial, that the record of the case reveal, for this Court's own edification, and for any possible appeal, what process was used in the selection of the limited cases for the bellwether trial.

This ruling applies as well to the Plaintiff who asserts that he has used a "random selection" process.

Discovery on this issue is essential so that the selection of bellwether cases can be determined to be reasonable, and representative of the total universe of claims, which is essential for the application of collateral estoppel.

To the extent that the selection may have represented attorney work product, in whole or part, it was required for purposes of resolving this issue. If EHR chose to have attorneys involved in the selection, that does not necessarily immunize all of the work and communications that may have been taken by the Defendant. A work product privilege is a qualified privilege, which is subject to discretionary application by the Court. Defendant will have a burden of showing with specific precedential authorities, that it can bar discovery of its selection process because it chose to have attorneys to do this work, which the Court believes could have been done by paralegals or other non-legal staff, once the guidelines had been established. The guidelines are discoverable. Communications between client and counsel for the purposes of securing legal advice are not discoverable, but must be logged.

The Defendant must provide a witness under the Rule 30(b)(6) principles who is personally knowledgeable and instructions not to answer must be limited to specific

communications (on the privilege log) which the 30(b)(6) witness had with an attorney. Counsel cannot determine whether an answer is binding on the corporation. But even if the communications themselves are privileged, the facts of which the corporation had knowledge, and its conduct, which it must divulge through its 30(b)(6) witness, are not privileged.

The Court has previously noted In re Chevron U.S.A., Inc., 109 F.3d 1016, 1019 (5th Cir. 1997), in which the Fifth Circuit, following a trial on "general liability or causation" in which both the plaintiff and the defendant selected fifteen claims from approximately 3,000 claimants in a toxic tort case, granted the defendant's request for mandamus relief as to the potential preclusive effect of the findings of the trial as to the nearly three thousand cases not tried. The court described the proposed proceeding as "simply a trial of fifteen (15) of the 'best' and fifteen (15) of the 'worst' cases contained in the universe of claims involved in this litigation. There is no pretense that the thirty (30) cases selected are representative of the 3,000 member group of plaintiffs." Id. Citing both substantive and procedural due process concerns, the court held that

> before a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected. Typically, such a finding must be based on competent, scientific, statistical evidence that identifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole. It is such findings that provide the foundation for any inferences that may be drawn from the trial of sample cases. Without a sufficient level of confidence in the sample results, no inferences may be drawn from such results that would form the basis for applying such results to cases or claims that have not been actually tried.

Id. at 1020 (citations omitted). The court had earlier clarified that it was granting mandamus only "as it relates to utilization of the results of [the] trial for the purpose of issue or claim preclusion" and repeated that limitation in its conclusion. Id. at 1017.

The Court will require counsel to advise the Court whether privilege logs have been prepared and the amount of time that is required for supplementation in response to this Order, together with a time frame for the renewed 30(b)(6) deposition of a representative of Defendant, and completion of discovery. Because the conduct of Defendant's counsel in the instructions not to answer virtually all substantive questions at the 30(b)(6) deposition was unfounded, and could have been avoided if this issue had been raised at the hearing on November 6, 2017, or by a separate motion for protective order, Plaintiff's counsel basically wasted time because of defense counsel's meritless objections. For this reason, the Court may award counsel fees to Plaintiff.

The Court may consider the prior conduct and any further unfounded objections to discovery as grounds to grant Plaintiff's Motion for Random Selection or to require a selection of cases based in part on random selection, and in part on other factors which are disclosed during discovery.

An appropriate Order follows.

O:\CIVIL 12\12-4239 Polansky v Exec Health Resources\12cv4239 Memorandum.docx