# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| *ex rel.* JESSE POLANSKY, M.D., M.P.H., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: |
| | ) | 12-CV-4239-MMB |
| | ) | |
| v. | ) | |
| | ) | |
| EXECUTIVE HEALTH RESOURCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## (PROPOSED) ORDER

AND NOW THIS _____ day of _____, 2019, having considered the

United States' Motion to Dismiss the Third Amended Complaint, pursuant to 31 U.S.C. §

3730(c)(2)(A) of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, with prejudice as to relator

Jesse Polansky, M.D., M.P.H., and without prejudice as to the United States, and any response

thereto, IT IS HEREBY ORDERED THAT:

The Motion is GRANTED, and this declined *qui tam* action is DISMISSED WITH

PREJUDICE as to relator, and WITHOUT PREJUDUCE as to the United States.


_____
THE HONORABLE MICHAEL M. BAYLSON
United States District Court Judge

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA,<br>*ex rel.* JESSE POLANSKY, M.D., M.P.H., | ) )<br>) | |
| Plaintiffs, | )<br>) | Civil Action No.:<br>12-CV-4239-MMB |
| | ) | |
| v. | )<br>) | |
| EXECUTIVE HEALTH RESOURCES, INC., | )<br>) | |
| Defendant. | )<br>)<br>) | |

## THE UNITED STATES' MOTION TO DISMISS RELATOR'S
## THIRD AMENDED COMPLAINT

Pursuant to 31 U.S.C. § 3730(c)(2)(A), the United States hereby moves to dismiss all remaining claims in the Third Amended Complaint brought on behalf of the United States by Relator Jesse Polansky, M.D., M.P.H. (relator) under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (FCA). As discussed in the accompanying Memorandum of Law in Support of the United States' Motion to Dismiss Relator's Third Amended Complaint, the FCA permits the United States to dismiss a *qui tam* action where, as here, further litigation by a relator would result in imposing significant costs and burdens on the government and waste precious judicial and governmental resources. Accordingly, the United States requests that all FCA claims be dismissed with prejudice as to relator and without prejudice to the United States.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM M. McSWAIN
United States Attorney
Eastern District of Pennsylvania

*s/ Charlene Keller Fullmer*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division


*s/ Viveca D. Parker*
VIVECA D. PARKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 861-8443
Email: Viveca.Parker@usdoj.gov

*s/ Renée S. Orleans*
ANDY J. MAO
Acting Director
ALLISON CENDALI
Assistant Director
RENÉE S. ORLEANS
Trial Attorney
Civil Division,Commercial Litigation Branch
Fraud Section
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-4504
Email: Renee.Orleans@usdoj.gov


*Attorneys for the United States of America*

Dated:  August 20, 2019

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| *ex rel.* JESSE POLANSKY, M.D., M.P.H., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: |
| | ) | 12-CV-4239-MMB |
| | ) | |
| v. | ) | |
| | ) | |
| EXECUTIVE HEALTH RESOURCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS RELATOR'S THIRD AMENDED COMPLAINT

The United States moves to dismiss this action brought under the *qui tam* provisions of

the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733.  The FCA authorizes a private party,

known as a "relator," to file suit on behalf of the United States to recover damages suffered

solely by the United States Government as a result of fraud or false claims submitted.  31 U.S.C.

§ 3730(b)(1).  Because of the unique nature of the FCA, Congress included several protections in

the statute to ensure that the United States retains substantial control over *qui tam* lawsuits filed

on its behalf.  Among these protections is the right of the United States to "dismiss the action

notwithstanding the objections of the person initiating the action if the person has been notified

by the Government of the filing of the motion and the court has provided the person with an

opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).  Courts have recognized

that this provision confers broad discretion on the United States to dismiss claims that it

determines are detrimental to the public interest.  *See Swift v. United States*, 318 F.3d 250, 252–

53 (D.C. Cir. 2003); *see also United States ex rel. Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 935–36 (10th Cir. 2005); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145–46 (9th Cir. 1998).

As explained further below, while all of the appellate courts to address the issue have concluded that the standard for dismissal is highly deferential, these courts have posited two different standards for dismissal.  The D.C. Circuit has held that the United States has an unfettered right to dismiss a relator's *qui tam* complaint, *Swift*, 318 F.3d at 252-53, while the Ninth and Tenth Circuits have held that the government must identify a valid government purpose for dismissal and a rational relationship between dismissal and accomplishment of that purpose.  *Ridenour*, 397 F.3d at 935–36; *Sequoia Orange*, 151 F.3d at 1145-46.  The United States submits that the D.C. Circuit's holding in *Swift* is the correct interpretation of the FCA, and best comports with the United States Constitution and separation of power principles.  The Court, however, need not choose between these standards because both are readily satisfied here.

While the United States does not take lightly the exercise of its inherent dismissal authority under § 3730(c)(2)(A), here the United States has determined that dismissal of this *qui tam* suit furthers the valid government purpose of conserving federal resources by avoiding further litigation costs and preserving government privileges.  Following considerable investigation and evaluation, the United States previously determined not to intervene in this action.  And as the United States has previously informed the Court and the parties, it has continued to evaluate the matter and to consider whether dismissal is appropriate based on developments in the case, "including arguments raised by the parties, further factual and evidentiary developments, and associated discovery burdens."  Dkt. No. 454 at 4.  In light of additional developments, the United States has now determined that dismissal of this matter is

warranted.  As discussed in more detail below, the United States' decision is based on its overall evaluation of the matter and in light of recent discovery orders that impose an additional burden on the United States requiring the production of sensitive and privileged government material, as well as relator's actions (including those for which the Court imposed sanctions) that may curtail his ability to prove certain aspects of the case and that could require the commitment of additional government resources.  The United States thus has determined that the potential benefits of permitting relator's case to proceed are outweighed by both the actual and potential costs to the United States and therefore that dismissal of this matter is appropriate.  As further demonstrated below, the United States' considerations are rationally related to dismissal of this matter and thus, under either standard of dismissal, the motion to dismiss should be granted.

## **<u>BACKGROUND</u>**

Relator filed this action pursuant to the *qui tam* provisions of the FCA on July 26, 2012, alleging, *inter alia*, that defendant Executive Health Resources (EHR) is perpetrating a fraudulent scheme to generate higher Medicare and Medicaid reimbursements for its client hospitals by advising hospitals to admit patients as "inpatients," and to bill Medicare or Medicaid accordingly, when outpatient observation care would have been more appropriate and less costly.

After an exhaustive investigation, the United States declined to intervene in the action on June 27, 2014.  Following the declination, relator, pursuant to 31 U.S.C. §3730(c)(3), elected to pursue the claims in this matter.  The parties then litigated motions to dismiss, which the Court granted in part and denied in part.  Dkt. Nos. 94, 228.  The parties subsequently filed motions regarding the appropriate scope of the litigation and discovery, including the appropriateness of statistical sampling and the extent of discovery from the government regarding the government's knowledge of the alleged conduct in light of the Supreme Court's ruling in *Universal Health*

*Services, Inc. v. Escobar*, 136 S. Ct. 1989 (2016).  Dkt. No. 140.  The Court deferred ruling on

the appropriateness of statistical sampling and instead ordered a bellwether trial on a sample of

440 claims.  Dkt. No. 240.  The claims subject to the bellwether trial cover the time period

between 2009 and 2012, prior to the implementation of the "Two-Midnight Rule" on October 1,

2013, which clarified the standard governing inpatient admissions.  *See* 42 C.F.R. § 412.3.  The

Court indicated that initial discovery in the case would focus on the time period preceding the

Two-Midnight Rule.  Dkt. No. 228 n. 1.

Subsequently, between December 2017 and September 2018, EHR issued a series of

subpoenas and corresponding *Touhy* requests[1] for documents and deposition testimony to several

federal agencies:  the Department of Health & Human Services (HHS) Office of Inspector

General (HHS-OIG); the HHS Centers for Medicare and Medicaid Services (CMS); the

Department of Justice (DOJ); and the U.S. Attorney's Office for the Eastern District of

Pennsylvania (USAO-EDPA).  The requests sought, among other information, the government's

internal  communications and investigative files prior to declination, tens of thousands of

potentially responsive documents from CMS – many of which include sensitive and deliberative

information – and testimony from current and former government employees.  CMS, the only

agency component that makes Medicare payment determinations, produced responsive

documents and withheld certain documents as privileged, while the other agencies objected on

---

[1] In *Touhy v. Ragan,* 340 U.S. 462 (1951), the Supreme Court upheld federal agencies' authority in 5 U.S.C. § 301 to promulgate regulations governing ''the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property.''  These regulations include the methods by which non-party federal agencies will comply with or oppose subpoenas for documents or testimony issued under Rule 45, commonly referred to as ''*Touhy* requests.''  *See Davis Enter. v. EPA*, 877 F.2d 1181, 1186 (3d Cir. 1989) (private litigants seeking documents from government agencies when the United States is not a party must comply with each agency's *Touhy* regulations).  The *Touhy* regulations at issue here are 45 C.F.R. §§ 2.1 *et seq*. (HHS) and 28 C.F.R. §§16.21-16.29 (DOJ).

the basis of privilege and other grounds.  *See* Attachments to the United States' Opposition to EHR's Motion to Compel the United States to Respond to Requests for Production and For Depositions.  Dkt. No. 302.

Following the government's objections and production, EHR filed a motion to compel. The government – a third-party for discovery purposes, *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009) – opposed the motion, arguing, *inter alia*, that (1) the agencies' *Touhy* decisions, reviewable under the standards of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06, were neither arbitrary nor capricious; (2) EHR failed to comply with the proportionality limitations and protections afforded non-parties under Rule 45; (3) EHR's request sought privileged information; and (4) CMS – the government agency that makes payment decisions at issue in the case – appropriately produced material and otherwise responded to the requests, consistent with the applicable *Touhy* regulations.  The Court ultimately allowed EHR to obtain additional discovery from CMS, including depositions of current and former CMS officials, while deferring a decision on EHR's remaining requests to other government entities.  Dkt. No. 325.

Additionally, in December 2018, the United States learned that relator had retained approximately 14,000 CMS documents on a DVD following his separation from CMS.  EHR filed a motion to compel production of these documents.  Dkt. No. 322.  During a telephonic hearing on December 21, 2018, the United States requested the opportunity to review the 14,000 CMS documents and assert any applicable privilege or protection prior to relator producing them to EHR.  The Court granted EHR's motion to compel over the government's objection and ordered relator to immediately produce the documents to EHR, subject to a clawback agreement

between the government and EHR.[2]  Dkt. 337.  In the interim, however, EHR identified a limited

number of documents from the 14,000 CMS documents that EHR intended to use at a January

15, 2019 evidentiary hearing regarding relator's discovery conduct.  After reviewing these

documents, the United States notified EHR that several documents contained information that

was protected by the deliberative process privilege.  EHR contested the government's claim of

privilege during the January 15, 2019 evidentiary hearing, and the Court subsequently issued an

order finding that the documents were no longer privileged because the documents were at least

eight years old.  Dkt. No. 354.[3]

Following relator's testimony at a hearing on January 15, 2019, about the circumstances

and legality of his retention of the 14,000 CMS documents, including when he informed EHR

and the government about the existence of these documents, EHR, on January 28, 2019, filed a

motion for sanctions against relator regarding the relator's belated production of these CMS

documents.  Dkt. No. 373.  Another evidentiary hearing was held on February 13, 2019, after the

Court directed Jessica Bowman, an attorney with the HHS Office of the General Counsel (HHS-

OGC) to testify.  Ms. Bowman appeared in person to testify in Court about the declaration she

submitted on January 11, 2019.  Ms. Bowman testified about her recollection of the events

relating to when relator informed the government and EHR about the existence of the DVD with

the 14,000 CMS documents.

---

[2] EHR and the United States executed a claw back agreement limited only to the documents
relating to the DVD on March 7, 2019.

[3] As explained in the Government's Memorandum in Support of its Assertion of the Deliberative
Process Privilege for Certain Documents (hereinafter "Gov't Memorandum") and the reply
memorandum (Dkts. No. 440-41 & 462), the United States respectfully disagrees with the
Court's reasoning and decision.

During a hearing on February 19, 2019, the Court addressed defendant's motion for

sanctions regarding relator's late disclosure of the DVD documents and noted:

> I don't see a need, for purposes of this case at this point, to make a finding as to whether what [relator] did was proper or improper. I will say that I don't find his recollection or as [sic] explanations credible. But I'm not prepared to find that he's committed perjury or lying about it.

Transcript, Feb. 19, 2019 hearing, at 5, Dkt. No. 404. The Court imposed sanctions against

relator for EHR's attorney fees and costs relating to the late production of the DVD documents.

During the February 19, 2019 hearing, the Court questioned the government about its review of

the DVD documents and again expressed skepticism concerning the applicability of the

deliberative process privilege to the documents based on their age. Dkt. No. 404, p. 13. Prior to

issuing a stay of proceedings in this case, the Court gave the government until March 8, 2019, to

brief its claim of deliberative process privilege over any documents. Dkt. No. 400.

On February 21, 2019, the United States notified the parties by email of its intention to

file a motion to dismiss pursuant to 31 U.S.C. § 3730(c)(2)(A), but stated that it was willing to

consider any additional information the parties wished to share bearing on that decision. EHR

then filed a motion to stay further proceedings of this case, which the Court granted on February

27, 2019. Dkt. No. 409.

Over roughly the next month, the government received multiple written submissions and

oral presentations from both parties pertaining to the bellwether claims. While the United States

ultimately disagreed with many of the arguments articulated by both parties in these various

submissions, the government engaged in a lengthy evaluation of the information provided by the

parties to ensure that its evaluation whether to dismiss this case would be fully informed.

On April 5, 2019, the day the Court had requested that the United States advise the Court

if it intended to file a motion to dismiss, relator informed both the government and the Court that

he intended to dismiss part of his case.  He subsequently notified the Court that he intended to pursue only the following claims:

> For all EHR inpatient certifications between January 1, 2009 and October 1, 2013, Relator will seek to prove liability and recover damages and penalties against EHR only for certifications that meet all of the following criteria:
>
> (i)    For beneficiaries whose length of stay after the inpatient admission was one (1) day or less;
>
> (ii)    The medical record does not demonstrate that there was a reasonable basis at the time of the inpatient order for the treating physician to expect a medically necessary hospital stay of 24 hours or longer.

Dkt. No. 428.

During a conference call on April 25, 2019, the government informed relator, EHR, and the Court that it would not at that time exercise its Section 3730(c)(2)(A) dismissal authority over the narrowed case that relator had proposed, but that it reserved the right to seek dismissal at a later date depending on the course of the ongoing proceedings.  The Court subsequently lifted the stay on discovery and, on May 10, 2019, instructed the United States to complete its production of outstanding CMS documents and file a brief relating to any CMS document withheld based on the assertion of the deliberative process privilege by June 3, 2019.  Dkt. No. 433.

The government complied with the Court's directive.  As of June 3, 2019, CMS, in total, produced over 42,000 pages of documents and submitted a memorandum and CMS declaration supporting the withholding of certain documents pursuant to the deliberative process privilege. Dkt. 440.  EHR opposed the government's assertion of the deliberative process privilege and also filed a motion seeking to compel further discovery from the government, specifically: (1) non-privileged documents from CMS hitting on search terms proposed by EHR, from the files of

additional custodians selected by EHR; (2) documents related to a settlement agreement concerning relator's prior employment with CMS; and (3) discovery from DOJ.  Dkt. 450.

By Order dated June 26, 2019, the Court denied EHR's most recent motion to dismiss the relator's Third Amended Complaint.  Dkt. No. 459.  Noting concerns about certain actions by relator, however, the Court also ordered discovery relating to claims submitted after implementation of the Two-Midnight Rule to begin on an expedited basis.  *Id.*  Thereafter, on July 11, 2019, EHR submitted a letter to government counsel seeking extensive discovery regarding the Two-Midnight Rule from numerous CMS custodians and proposing numerous search terms to run for each custodian.  Exhibit A.  EHR and the government have exchanged correspondence regarding the scope of this request, but have not reached agreement as of the date of this motion.

By its June 26, 2019 Order, the Court directed the Special Master to undertake consideration of the pending motions related to discovery from the government.  Dkt. No. 459 at 6.  Following a telephonic hearing on July 19, 2019, the Special Master issued a Report and Recommendation on August 8, 2019, recommending, *inter alia*, that the government be ordered to:  (1) produce all documents withheld on the basis of the deliberative process privilege that are dated 2015 or earlier for which there has been no assertion of attorney client or work product privileges and that such documents should be produced as "Confidential Discovery Material" under the terms of the Protective Order in this case; (2) search for and produce responsive documents from the files of three additional CMS custodians based on the same search terms used for the previously searched custodians; and (3) produce information relating to relator's settlement agreement and prior employment with CMS, including approximately 228 megabytes of electronic data.  Dkt. No. 510.  The United States filed its objections to the Special Master's

- 9 -

Report and Recommendation.  On August 16, 2019, the Court issued an Order overruling the United States' objections relating to the United States' assertion of the deliberative process privilege pertaining to Phase I discovery (*i.e*., claims subject to the bellwether trial), "which stops at approximately October 1, 2013," and directing the United States to begin producing these documents "forthwith on a rolling basis" subject to the Protective Order and not including any documents for which the government claims attorney client privilege. Dkt. No. 520.  The Court's Order did not address the United States' objection to the search and production of documents for the three additional CMS custodians.

To date, the United States has had to devote considerable resources to this declined case. HHS-OGC has dedicated at least two attorneys, one almost full-time, and the Department of Justice has dedicated up to four attorneys to this case.  In addition, the United States has incurred substantial costs responding to discovery requests in this matter.

## ARGUMENT

### A.   The FCA Statutory Framework

The FCA enables the United States to recover monies lost due to the submission of false claims.  *See* 31 U.S.C. § 3729.  Among the unique features of the FCA is that it allows private parties, known as relators, to bring an action on behalf of the United States through the filing of a *qui tam* action.  *See id.* § 3730(b).

Among other things, the FCA directs that the relator must file his or her complaint under seal and serve it, along with a written disclosure of evidence, on the United States.  *See id.* §§ 3730(b)(1) and (2).  The United States has 60 days (and any extensions granted by the district court) to investigate the allegations and elect whether or not to intervene in the litigation.  *See id.* §§ 3730(b)(2) and (3).  If the United States intervenes in the case, "the action shall be conducted

by the [g]overnment," and the government assumes "the primary responsibility for prosecuting the action" and is not bound by an act of the relator. *Id.* at §§ 3730(b)(4)(A) and (c)(1). The relator remains a party to the suit, but the government may settle the case over his objection, *see id.* § 3730(c)(2)(B), or may seek to limit his participation in the litigation, *see id.* § 3730(c)(2)(C).

If the United States declines to intervene in the case, the relator has "the right to conduct the action." *See id.* § 3730(c)(3). However, that right is *not* absolute; rather, it is circumscribed by a number of limitations designed to ensure that the United States retains control over the declined action. For example, the relator cannot dismiss the action without the written consent of the Attorney General. *See id.* § 3730(b)(1). The court may stay discovery in the *qui tam* action if it would interfere with the government's investigation or prosecution of another matter. *See id.* § 3730(c)(4). Moreover, even when the Attorney General initially declines to intervene in the suit, the district court "may nevertheless permit the government to intervene at a later date upon a showing of good cause." *Id.* § 3730(c)(3).

Most importantly for purposes of this motion, the FCA authorizes the Attorney General to dismiss a *qui tam* action over a relator's objection:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

*Id.* § 3730(c)(2)(A). The United States is authorized to dismiss even where, as here, it has opted not to intervene. *See Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008) (following *Swift* and noting "the usual deference we owe the Government's determination whether an action should proceed in the Government's name"); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994), *citing Juliano v. Fed. Asset*

*Disposition Ass'n*, 736 F. Supp. 348 (D.D.C. 1990), *aff'd*, 959 F.2d 1101 (D.C. Cir. 1992) (table).

B.    **Standard of Review**

The United States possesses broad authority to dismiss a *qui tam* action under section 3730(c)(2)(A), and appellate courts have adopted two independent, highly deferential standards to guide the application of the government's dismissal authority.  In *Swift*, 318 F.3d at 252, the District of Columbia Circuit interpreted the FCA to grant the United States "an unfettered right to dismiss" a *qui tam* action.  The Ninth Circuit requires a "rational relationship" for dismissal, but recognizes in assessing that relationship that the United States has broad prosecutorial discretion to dismiss even meritorious *qui tam* cases if the reasons for dismissal are rationally related to a legitimate government interest.  *See Sequoia Orange Co.*, 151 F.3d at 1145.  Building on *Sequoia Orange*, the Tenth Circuit has recognized the deference due the government and has concluded that ". . .['] it is enough that there are plausible, or arguable, reasons supporting the agency decision [to move for dismissal].'"  *Ridenour*, 397 F.3d at 937 (citing the district court decision in *Sequoia Orange*, 912 F. Supp. 1325, 1341 (E.D. Cal. 1995)).

The Third Circuit has yet to adopt a standard for dismissal under section 3730(c)(2)(A).  However, in *United States ex rel. Surdovel v. Digirad Imaging Solutions,* No. 07–0458, 2013 WL 6178987, at *2 (E.D. Pa. Nov. 25, 2013) (Stengel, J.), before granting the government's motion to dismiss, the district court observed that both tests are "extremely deferential" to the United States.  Most recently, on April 3, 2019, Judge Savage, applying the *Sequoia Orange* standard, granted the government's motion to dismiss a *qui tam* matter, *United States ex rel. SMSPF v. EMD Serono, Inc.,* 370 F.Supp.3d 483, 491 (E.D. Pa. 2019), holding that the

government is "entitled to do a cost/benefit analysis to decide whether to pursue a case, even a meritorious one."

As explained below, the more recent *Swift* standard better comports with the FCA's statutory text and framework, as well as the well-established deference due to the government's exercise of prosecutorial discretion.  Under either standard, however, dismissal is warranted in this case.

C.      **The Court Should Recognize the Government's Unfettered Right to Dismiss a Declined *Qui Tam* Action**

Consistent with *Swift*, this Court should find that the United States has an unfettered right to dismiss a *qui tam* suit and defer to the United States' decision to dismiss this action.

As the *Swift* court explained, the FCA operates against the backdrop of the general principle of separation of powers, in which the Executive Branch exercises control over whether to pursue litigation for the United States.  *Swift,* 318 F.3d at 251-52.  The court concluded that full deference to the Executive Branch is particularly appropriate, observing that "we cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment in this regard," given that "'[t]he Government'—meaning the Executive Branch, not the Judicial—'may dismiss the action,' which at least suggests the absence of judicial constraint."  318 F.3d at 252.  The *Swift* court further held that the government's decision not to prosecute a case that is brought in its name is "unreviewable," including decisions to dismiss under section 3730(c)(2)(A).  *Id.*

As the D.C. Circuit concluded in *Swift*, imposing judicial review on the Executive's litigation determinations is inconsistent with the general principle of separation of powers: "decisions not to prosecute, which is what the government's judgment in this case amounts to, are unreviewable."  *Id.*  Thus, the appellate court concluded, under § 3730(c)(2)(A), the Attorney

General has an "unfettered right to dismiss an action." *Id.*; *see also id.* at 253 ("The decision whether to bring an action on behalf of the United States is therefore 'a decision generally committed to [the Government's] absolute discretion' for the reasons spelled out in *Heckler v. Chaney,* 470 U.S. [821,] 831 [1985]").

*Swift* also rejected the notion that a relator's right to a hearing, as provided in section 3730(c)(2)(A), was intended to confer authority on the court to review the government's reasons for dismissal. *Id.* at 253. It explained that nothing in the FCA "purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Id.; see also United States ex rel. Sibley v. Delta Reg. Med. Ctr.*, Civ. No. 4:17-cv-53-GHD-RP, Mem. Op. (N.D. Miss. Mar. 21, 2019), at 8-13 (agreeing with *Swift* rationale and citing *Riley v. St. Luke's Episcopal Hosp.*, 262 F.3d 749 (5th Cir. 2001) (*en banc*)) (attached hereto). Instead, *Swift* concluded that the function of a hearing, if requested by relator, "is simply to give the relator a formal opportunity to convince the government not to end the case." *Id.*

The *Swift* standard is also more consistent with the plain language of section 3730(c)(2)(A), which differs markedly from the provision in the statute authorizing the Attorney General to settle a *qui tam* case over a relator's objection: "The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, *that the proposed settlement is fair, adequate, and reasonable under all the circumstances*." 31 U.S.C. § 3730(c)(2)(B) (emphasis added). Significantly, section 3730(c)(2)(A) imposes no similar limitation on the Attorney General's authority to dismiss a *qui tam* case.

The Attorney General's broad dismissal authority in the statute also sharply contrasts with the ability of a relator to dismiss a *qui tam* case. The FCA specifically states that the relator has no such power unless "the court and the Attorney General give written consent to the dismissal and their reasons for consenting." *Id.* at § 3730(b)(1). No such restrictions appear in section 3730(c)(2)(A).

It is not surprising that Congress gave unfettered discretion to the Attorney General to determine whether a *qui tam* case should be prosecuted. A *qui tam* relator has been authorized by Congress to sue solely to seek recovery of injuries suffered by the United States, not by the relator. As the Supreme Court made clear in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), a relator has Article III standing because he or she can be regarded as having received a "partial assignment from Congress of the Government's damages." *Id.* at 773, 772-774. Specifically, a relator has standing "to assert the injury in fact suffered by the assignor [United States]." *Id.* Thus, a relator himself or herself has suffered no cognizable injury warranting the continuation of a suit opposed by the United States. *See id.* at 773. And, as observed in *Swift*, the United States' decision to dismiss the action terminates the assignment. 318 F.3d at 254, fn. *. Accordingly, relator's power to file suit comes from an assignment by the United States, and the United States has a right to withdraw that assignment at any time.

Here, the United States has determined that dismissal of this case is in the best interest of the United States. Thus, pursuant to *Swift*, the Court should enter the proposed Order of dismissal.

D.    **Dismissal is Also Warranted Under *Sequoia Orange's* Rational Relationship Test**

While the United States submits that *Swift's* "unfettered discretion" standard reflects the appropriate construction of 3730(c)(2)(A), dismissal is also warranted under the rational relationship test articulated in *Sequoia Orange*.  Under this standard, the United States need only (1) identify a "valid government purpose" for dismissing the case, and (2) show a "rational relation between dismissal and accomplishment of the purpose."  *Sequoia Orange*, 151 F.3d at 1145 (quotations omitted).  If the United States satisfies this two-step test, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal."  *Id.*

In developing this test, the Ninth Circuit observed that "the decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws," and the dismissal provision in the FCA should not be construed to grant the judiciary an impermissible power to approve or disapprove the Executive's exercise of prosecutorial discretion. *Id.* at 1143.  Consequently, the Ninth Circuit reasoned that when a court considers a motion by the government to dismiss a *qui tam* case, it should "respect[] the Executive Branch's prosecutorial authority by requiring no greater justification of the dismissal motion than is mandated by the Constitution itself."  *Id.* at 1146.  As a result, even where the *Sequoia* standard is applied, courts are careful not to create barriers to the government's exercise of such discretion.  Even under the *Sequoia* standard, the government "need only show that its decision to dismiss the case is neither arbitrary nor irrational."  *United States ex rel. Surdovel*, 2013 WL 6178987 at *2.

Numerous courts, including the Ninth Circuit in *Sequoia*, have acknowledged that litigation costs represent a valid government interest justifying dismissal.  *See Sequoia Orange*, 151 F.3d at 1146 (approving of district court's consideration of "the burden imposed on the

- 16 -

taxpayers by its litigation" and "internal staff costs" the government would incur with relator's

litigation); *Swift*, 318 F.3d at 254 ("[T]he government's goal of minimizing its expenses is still a

legitimate objective, and dismissal of the suit furthered that objective."); *United States ex rel.*

*Borzilleri v. Abbvie, Inc.*, No. 15-CV-7881(JMF), 2019 WL 3203000 (S.D.N.Y. July 16, 2019)

(government costs are a valid justification for dismissal even where the claims may have merit);

*United States ex rel. Stovall v. Webster Univ.*, No. 3:15-CV-03530-DCC, 2018 WL 3756888, at

*3 (D.S.C. Aug. 8, 2018) (granting the government's motion to dismiss because "dismissal will

further its interest in preserving scarce resources by avoiding the time and expense necessary to

monitor this action"); *see also United States ex rel. Levine v. Avnet, Inc.*, No. 2:14-cv-17, 2015

WL 1499519, at *5 (E.D. Ky. Apr. 1, 2015) (same); *United States ex rel. Nicholson v.*

*Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (same).

     In *United States ex rel. SMSPF*, in which the court applied the Ninth Circuit test, the court

held that the government is "entitled to do a cost/benefit analysis to decide whether to pursue a

case, even a meritorious one."  370 F.Supp.3d at 491.  Specifically, in finding that the

government had acted rationally in seeking dismissal, the court noted, "like any other plaintiff in

a civil case, the government has the option to end litigation it determines is too expensive or not

beneficial.  Preserving litigation costs is a valid interest even where the claims may have merit."

*Id*. at 490.  "Decisions concerning the allocation of resources to individual programs … and to

particular aspects of those programs … involve a host of policy choices" not susceptible to

resolution "by federal judges interpreting the basic charter of Government for the entire

country."  *Id.* at 128-29.  As the Supreme Court has summarized, "an agency's decision not to

prosecute or enforce, whether through civil or criminal process, is a decision generally

committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)

(collecting cases).  Such decisions "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," and require the agency to assess "whether agency resources are best spent on this violation or another … and, indeed, whether the agency has enough resources to undertake the action at all."  *Id.* (noting that "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing").

The discovery demands in this case have imposed a tremendous, ongoing burden on the government.  The government already had committed significant resources to this matter to address the numerous subpoenas and *Touhy* requests prior to the Court's ruling on EHR's first motion to compel in December 2018.  The government opposed that motion, arguing that discovery against the government agencies in this declined *qui tam* matter should be limited.  The Court disagreed and authorized further extensive document production and depositions of present and former CMS employees.  Although the United States has produced the documents previously ordered by the Court, the Special Master recommended that CMS perform additional searches of three more CMS custodians.  The search, collection, review, and production of documents relating to these additional custodians would add to the ongoing burden on the government.[4]

Further, even though EHR has access to a vast amount of public information relating to the Two-Midnight Rule – a regulation that has gone through extensive notice and comment public rulemaking over several years – it has requested that CMS perform additional searches for numerous CMS custodians.  In its August 16, 2019 Order, the Court requested that EHR file a brief explaining the relevancy of this discovery and provided relator with an opportunity to respond.  Depending on the outcome of that briefing, it is entirely possible that the United States

---

[4] The August 16, 2019 Order does not address the three additional CMS custodians.

will be required to produce discovery of Two-Midnight claims.  Given the procedural history of

this case, it is also quite possible that the Two-Midnight Rule discovery may become the subject

of further motions practice.  At the time the United States previously refrained from seeking

dismissal based on relator's decision to narrow his case, the United States anticipated that any

discovery on Two-Midnight Rule claims would not begin, if at all, until *after* the bellwether trial.

As the Court previously stated, the bellwether trial would "assist the parties in possible

settlement, and probably . . . achieve jury verdicts which may have res judicata and/or collateral

estoppel impact on additional, or possibly all other claims."  Dkt. No. 228, n. 1.  The United

States also did not anticipate the scope of EHR's requested discovery on the pre-Two-Midnight

claims.

      As a result of the discovery demands in this matter, as noted, the case has required almost

full-time attention of one attorney in the HHS Office of the General Counsel (HHS-OGC), as

well as frequent assistance from other HHS-OGC and HHS-OCIG attorneys and paralegal staff.

This burden will only continue, as EHR and relator intend to depose multiple current and former

CMS employees, taking CMS personnel away from other important job responsibilities to

prepare for and attend the depositions.

      The United States is also concerned that material it regards as privileged has been and

will be produced and used in this case.  While it is certainly the province of the Court to make

decisions with respect to the government's claims of privilege over documents before it, it is and

should be the United States' right to decide whether it wishes to allow those documents to be

disclosed and whether the potential harm of any such disclosure outside the government

outweighs any benefits.  Some sensitive and deliberative material already was exposed because

relator possessed a DVD containing CMS documents, and the Court ordered relator to produce

the DVD to EHR.  And now, the Court has ordered the United States to produce numerous

additional documents that the United States asserts are privileged.  While the recommendation

allows production pursuant to the Protective Order in the case, the documents will still be

produced outside of the agency and potentially used in this litigation.

      Moreover, other actions by relator have caused additional burden on and concern for the

government.  For example, relator has indicated that he intends to re-address issues relating to

his prior employment at CMS that were resolved through a previous settlement agreement if

documents relating to that agreement are produced.  The Special Master has now recommended

that these documents be produced and relator has not filed objections to this recommendation.

Issues relating to this previous settlement agreement and prior employment also arose during

relator's recent deposition on August 7 and 8, 2019.  These issues will likely require the

government to devote yet more resources to this matter and require certain CMS personnel to

defend prior decisions and actions that they believed were resolved.

      If this litigation were to go forward, the United States would also need to continue

devoting considerable resources to monitoring the case to ensure that the United States' interests

are protected and not harmed by the ongoing litigation.  Two Civil Division attorneys and two

Assistant U.S. Attorneys have been assigned to this matter, and all four have devoted a

considerable amount of time to this case at the expense of other important matters.

      For the reasons discussed above, courts have recognized that the types of costs the United

States faces in this case justify dismissal under the rational basis test even if the relator's claims

are assumed to have merit.  This is because the government is entitled to prioritize how to

allocate its scarce resources, and may rationally conclude that its resources can better be used for

another purpose.  *See Heckler,* 470 U.S. at 831.  Nevertheless, and beyond these significant

concerns, the United States also remains concerned about relator's ability to prove a FCA

violation.  For example, relator lacks medical records to determine whether all of the narrowed

bellwether claims are false and the Court has now precluded further discovery of those records

due to the lateness of relator's motion to compel those records.  Relator has also failed to identify

to the United States evidence that EHR caused the submission of false claims to CMS following

implementation of the Two-Midnight Rule.  Finally, the United States is concerned about

relator's credibility in light of relator's actions in this case.

Accordingly, for these various reasons, the United States has determined that the

significant discovery and other costs the United States will incur if this case continues outweigh

any benefits.  The United States is entitled to engage in this type of cost/benefit analysis and to

conclude in light of such an analysis, as it has, that dismissal of this case best serves the public

interest.

## **CONCLUSION**

For the reasons set forth above, this Court should dismiss all claims brought on behalf of

the United States with prejudice as to relator and without prejudice as to the United States.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM M. McSWAIN
United States Attorney
Eastern District of Pennsylvania

*s/ Charlene Keller Fullmer*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*s/ Viveca D. Parker*
VIVECA D. PARKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 861-8443
Email: Viveca.Parker@usdoj.gov


*s/ Renée S. Orleans*
ANDY J. MAO
Acting Director
ALLISON CENDALI
Assistant Director
RENÉE S. ORLEANS
Trial Attorney
Civil Division,Commercial Litigation Branch
Fraud Section
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-4504
Email: Renee.Orleans@usdoj.gov

*Attorneys for the United States of America*

Dated:  August 20, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of August, 2019, I filed electronically a true and correct copy of the foregoing United States' Motion to Dismiss Relator's Third Amended Complaint via the Court's Electronic Case Filing ("ECF") System.  This document is available for viewing and downloading from the ECF and the parties have been electronically notified of its filing by the ECF system.

*s/ Viveca D. Parker*
VIVECA D. PARKER
Assistant United States Attorney